*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 25-CF-0166

LAMAR ROGERS, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2023-CF2-006361)

(Judith Pipe, *Judge*)

(Submitted June 2, 2026                    Decided July 16, 2026)

*Steven R. Kiersh* was on the brief for appellant.

*Jeanine Ferris Pirro*, United States Attorney, and *Chrisellen R. Kolb*, *Natalie Anderson*, and *David Goodhand*, Assistant United States Attorneys, were on the brief for appellee.

Before EASTERLY, DEAHL, and SHANKER, *Associate Judges*.

EASTERLY, *Associate Judge*: Lamar Rogers was convicted *in absentia* of multiple firearm- and ammunition-related offenses after the trial judge went to commendable lengths to convince Mr. Rogers to appear and ultimately obtained an express waiver of his right to be present at his jury trial, before jury empanelment,

from the sally port of the courthouse. On appeal, he argues that this waiver was invalid and the trial court erred by conducting his trial without him. He also argues that his felon-in-possession-of-a-firearm conviction violates the Second Amendment. We affirm.

## I.    Facts

Mr. Rogers was arrested on September 7, 2023, and, after a preventive detention hearing at which he appeared, he was ordered "held without bond for a period not to exceed one hundred days from September 8, 2023, until the trial or other final disposition of this matter." Over the next almost fifteen months, however, Mr. Rogers refused to physically appear in the courtroom.[1] After holding over a dozen hearings at which Mr. Rogers refused to appear, the trial judge asked the parties to brief how to move the case forward. The defense and the government both filed pleadings in which they agreed that (1) Mr. Rogers had a right to be present at his trial, and (2) as a defendant charged with a felony, pursuant to Superior Court Rule of Criminal Procedure 43(f), he could waive that right only if he was "initially

---

[1] Mr. Rogers was twice evaluated, in November 2023 and January 2024, at St. Elizabeths hospital and was determined to be competent both times. Based on Department of Behavioral Health reports following these exams, the trial judge likewise deemed Mr. Rogers competent. Although the defense subsequently requested an independent evaluation, it withdrew that request in May 2024 because Mr. Rogers indicated that he "d[id] not want to challenge the Court's finding of competence."

present at trial."[2]

Confronted with this procedural deadlock, the trial judge convened a hearing on November 22, 2024, and, anticipating that Mr. Rogers would continue to refuse to appear in court, asked "a [Department of Corrections (DOC)] official, equipped with a body-worn camera . . . to telephone the court and stand outside Mr. Rogers's cell holding the phone on speakerphone . . . , so that Mr. Rogers could hear the proceeding." At the hearing, the judge noted that she had received "no suggestions as to what to do" and would not "hold this man forever." To break through the impasse and attempt to honor Rule 43, the judge announced (and subsequently memorialized in a written order) that (1) she would schedule Mr. Rogers's trial for December 4, 2024; (2) if he failed to appear on that date, she would, accompanied by defense counsel and government counsel, go to speak with him in person, advise him of his right to be present at trial, inform him that his trial would be held with or without him on December 9, 2024, and record this visit on her court-issued iPad; and (3) if he still failed to appear on December 9, 2024, she would proceed with his trial without him on that date. The defense objected to this plan on Rule 43 grounds but offered no alternatives. The government proposed that the court issue a use-of-

---

[2] The government also cited case law for the proposition that a trial begins for Rule 43 purposes upon empanelment of the jury. *See, e.g.*, *Campbell v. United States*, 295 A.2d 498, 502 (D.C. 1972). The defense, which filed its pleading first, did not speak to this issue.

reasonable-force order to bring Mr. Rogers to the courtroom so that a waiver could be elicited, but the judge rejected this proposal, reasoning that it was "illogical to put the defendant in physical jeopardy to protect a right he has shown no desire to assert."[3]

On December 4, the DOC transported Mr. Rogers from the jail to the courthouse, but Mr. Rogers refused to disembark from the van which was parked in the courthouse's sally port. Accompanied by counsel, the trial judge left the courtroom and went to speak with Mr. Rogers. The judge informed him of his rights and told him that trial would begin on December 9. The judge documented this interaction both by recording it on video and, once she returned to the courtroom, by recounting what she (and counsel) had said to Mr. Rogers.[4]

Back in the courtroom, the government renewed its request for the court to authorize the use of force, explaining that "[n]obody wants someone to sit in jail for

---

[3] At this proceeding, the defense indicated that it did not oppose a use-of-reasonable-force order "provided there is someone here, an attorney to advise Mr. Rogers," and requested that the judge appoint "independent counsel" to advise him of his rights. But the judge was unpersuaded that defense counsel was unable to advise Mr. Rogers of his rights. The defense alternatively proposed that Mr. Rogers be sent to St. Elizabeths again for competency restoration, but the judge observed that Mr. Rogers had never been found incompetent. The judge also noted that the defense had been given an opportunity to have an independent expert assess Mr. Rogers's competency but had withdrawn its request to do so.

[4] This court obtained a copy of the video recording from Superior Court.

14 months pretrial waiting for what I believe is a hundred-day hold" and also that the government had an interest in having Mr. Rogers in the courtroom at trial so that it could elicit an in-court identification. The trial judge again declined to authorize the use of reasonable force to bring Mr. Rogers to the courtroom but invited the government to seek immediate review from the Court of Appeals if it wished. The judge did, however, grant the government's request to "make clear on the record that there have been no findings of incompetence and that based on everything [the court has] before it, it does appear to the court that the defendant is competent, has access to counsel, and is making this decision on his own." Over the defense's renewed Rule 43 objection and its objection to the use of reasonable force, the judge then reiterated that trial would commence on December 9, 2024.[5]

On December 9, Mr. Rogers again refused to disembark from the van when it reached the courthouse sally port, and the trial judge again left the courtroom with counsel to speak to him. This time, the trial judge used her court-issued iPad to broadcast her conversation with Mr. Rogers via Webex live to the courtroom. The

---

[5] The defense also asked for an independent expert to review Mr. Rogers's competency records and moved to withdraw as counsel. Regarding the former request, the trial judge observed again that there was no reason to question Mr. Rogers's competence and the defense had abandoned an earlier-provided opportunity to pursue a competency challenge. As for the latter, the judge found that there was no reason to believe Mr. Rogers had any "specific issue" with counsel or that he would act differently with a new lawyer. Accordingly, the judge denied both motions.

following conversation was transmitted (and video recorded[6]):

Court: Mr. Rogers, can you hear me?

Mr. Rogers: Yes.

Court: Mr. Rogers, we're going to start your trial today. Would you like to come upstairs? Okay. Do you understand you have a right to be present for trial?

Mr. Rogers: Yes.

Court: And do you understand that you also have a right to waive that?

Mr. Rogers: Yes.

Court: And is it your choice, sir, to waive your right to be present at trial?

Mr. Rogers: Correct.

Court: And do you understand that at a trial the government will bring in witnesses and evidence to establish beyond a reasonable doubt that you committed the crimes that you are charged with? You would have the right to bring in your own witnesses and evidence if you wanted to, although you are not required to do so. You can even testify if you wanted to, to tell the jury your side of the story. If you decide not to be present for your trial, you are giving up all of those rights to hear the evidence, as well as present your side of the story to the jury. Do you understand you're giving up all those rights?

Mr. Rogers: I understand.

Court: And is it your choice to give up those rights?

---

[6] Again, this court obtained a copy of the video recording from the Superior Court.

Mr. Rogers: Correct.

Court: Has anyone forced you, pressured you, or coerced you to give up those rights?

Mr. Rogers: No.

Court: Has anyone promised you anything to give up those rights?

Mr. Rogers: No.

After this exchange, the trial judge stated that she wanted to make sure Mr. Rogers was aware of the charges against him and formally arraigned him. Defense counsel entered a plea of not guilty on Mr. Rogers's behalf to each count, requested a speedy trial, and reasserted his right to be present in the courtroom under Rule 43. The judge then asked Mr. Rogers if he wanted to go upstairs, if he had any questions for the court about his right to be present, and if he wanted to speak to his lawyer about his right to be present; he responded "no" to all of these questions.

Once back in the courtroom, the trial judge stated that she believed "everyone could hear us in the courtroom when we were downstairs, but to make sure that the record is very clear" she memorialized the fact that:

> We [the judge and counsel] did go down outside the cellblock to the [sally port] where Mr. Rogers was still in the DOC van. Mr. Rogers was sitting up near the grates. I asked Mr. Rogers if he wanted to come upstairs for his trial. He said no. I explained to him he had a right to be present and did he understand that and he said yes. I asked him if he wanted to waive that right and he said yes. I asked him if anyone forced him, pressured or coerced him to waive that right. He said no. I asked him if anyone

>promised him anything to waive that right, and he said no.
>
>There were a few other, kind of, ensuring . . . a knowingly, voluntary, and intelligent waiver of his right to be present . . . questions that I asked. That was the general gist of it. I also did arraign him on the indictment and he stated that he didn't have any further questions and he didn't want to speak with counsel, and we came upstairs.

Neither counsel objected to this recap of the encounter. The judge then explained that, in her view, "Mr. Rogers has fully waived his right to be present." The judge declined to hold Mr. Rogers "until the statutory maximum under the law expires" because she deemed that "unconscionable." The judge also noted that Mr. Rogers had already served more than the mandatory minimum and was "in a probation eligible 6 to 24 month box. So he's already past the mid-point even." Lastly, the judge observed that the government had a right to try Mr. Rogers, who had never been found incompetent. Thus the judge announced that she would not hold Mr. Rogers indefinitely without trial any longer.

Defense counsel opposed moving forward with Mr. Rogers's trial, observing that "under Rule 43 . . . [Mr. Rogers] has a right to be present in court, not in a sally port, for each and every phase of a felony case." The judge responded that,

>to be clear, it was the judge, the prosecutor, and the defense attorney all present physically. The only difference is it did not occur in the courtroom. Certainly, courts have upheld when people have been in hospitals

before. We had WebEx -- that we can hold hearings at a hospital to arraign someone, and we have done that and that has been found to be proper under Rule 43 and be present for all purposes.

The court then asked defense counsel if she wanted to say "[a]nything . . . else . . . as to why the hearing did not constitute [Mr. Rogers] being physical[ly] present?" Defense counsel responded, "Nothing further." The judge then proceeded to select a jury.

For the duration of trial, DOC transported Mr. Rogers to the courthouse daily; he refused to leave the sally port; and his counsel renewed his Rule 43 objection. The jury found Mr. Rogers guilty of unlawful possession of a firearm (prior conviction), possession of an unregistered firearm, and unlawful possession of ammunition, D.C. Code §§ 22-4503(a)(1), 7-2502.01(a), 7-2506.01(a)(3), and the judge sentenced him to eighteen months in prison.[7] Because of the time he had already served in jail, Mr. Rogers was released from incarceration about two weeks after his sentencing. This appeal followed.

---

[7] Mr. Rogers appeared in the courtroom for his sentencing hearing but almost immediately informed the court that "[he] did not want to be [t]here today." After informing him of his right to be present and his right to appeal, the judge ruled that he had waived his right to be present, permitted him to leave the courtroom, and then announced his sentence.

## II.     Analysis

### A.     Waiver of right to be present at trial

Mr. Rogers argues the trial judge erred when it tried him *in absentia* because he did not validly waive his right to be present. Mr. Rogers's brief is not a model of clarity, but we understand him to challenge his waiver on the grounds that it failed to satisfy either the standard for waivers of constitutional rights under *Johnson v. Zerbst* because it was not knowing, intelligent, and voluntary, 304 U.S. 458, 464 (1938), or the requirements of Rule 43 because it was conducted outside of the courtroom. Mr. Rogers further observes that even if the court elicited a valid waiver, "there is still the question whether the trial court has abused its discretion in ordering a trial *in absentia*," quoting *Kimes v. United States*, 569 A.2d 104, 110 (D.C. 1989). We examine each of these arguments in turn.

In challenging his waiver as constitutionally inadequate, Mr. Rogers asserts that he "did not respond to the court's questioning regarding the waiver." But the recorded transmission of the trial judge's exchange with Mr. Rogers on December 9, 2024, when she elicited his waiver, in conjunction with the statements she placed on the record once back in the courtroom, refutes that assertion. The judge (1) advised Mr. Rogers of his right to be present, to hear the government's evidence against him, and to offer his own evidence, including his own testimony; (2) asked

him if it was his "choice to give up those rights," if "anyone [had] forced, pressured you, or coerced you to give up those rights," and if "anyone [had] promised [him] anything to give up those rights"; and (3) obtained unequivocal responses to its questions: "yes" (it was his choice), "no" (he had not been forced or coerced), and "no" (he had not been promised anything). The court subsequently asked Mr. Rogers if he wanted to go upstairs, if he had any questions for the court about his right to be present, and if he wanted to speak to his lawyer about his right to be present; Mr. Rogers responded "no" to all of these questions.

Mr. Rogers also asserts without elaboration that his waiver should be deemed inadequate under *Johnson v. Zerbst* because "issues of competency were present in this case." To the extent he suggests these "issues" were outstanding at the time he waived his right to be present, the record again does not support this argument. Although Mr. Rogers's refusal to come to court over many months prompted questions about his competence to go to trial, he was assessed twice and was not determined to be incompetent on either occasion. *See supra* note 1. Moreover, the defense was given the opportunity to engage an independent expert to reevaluate Mr. Rogers, but it abandoned that effort months before trial. *See supra* notes 3 & 4. Mr. Rogers alludes to a November 25, 2024, request by the defense to revive that effort after the court had already announced its plan to bring the case to trial, but the trial judge was well within her discretion to refuse this belated request after Mr. Rogers

had been jailed for fifteen months, and where there was no indication that his circumstances had changed. *See Thorne v. United States*, 471 A.2d 247, 249 (D.C. 1983) (concluding the trial court did not abuse its discretion in denying a "day-of-trial motion for a competency determination" where "appellant failed to present prima facie evidence in support of [his] request"). Consequently, there is no record basis to conclude that there were unresolved issues related to Mr. Rogers's competence when he waived his right to be present.

Seeing no basis in the record for Mr. Rogers's challenge to the constitutional adequacy of his waiver, we turn to his argument that "the requirements of . . . Rule 43 were not satisfied by the trial Court." Under Superior Court Criminal Procedure Rule 43, a defendant charged with a felony must be "initially present at trial" in order to waive their right to be present at trial. Super. Ct. Crim. R. 43(f)(1)(A). Such a waiver may last for the duration of trial. Super. Ct. Crim. R. 43(f)(2). Mr. Rogers focuses exclusively on the fact that the court did not conduct this waiver in the courtroom. *See* Rogers Br. at 2 (noting that the court "advised [Mr. Rogers] outside the courtroom of his right to be present at his trial"), *id.* at 4 (noting that the court addressed defendant "in a restricted area of the courthouse"); *id.* (noting that the "trial judge believed there was no precedent . . . that could provide a guide for whether reasonable force could be used to have a defendant brought into

the courtroom").[8] We review this argument, which requires us to interpret Rule 43, de novo. *See Dixon v. United States*, 304 A.3d 966, 968 (D.C. 2023).

Mr. Rogers was not in the courtroom at the time the trial judge elicited his waiver, but he was physically present on courthouse property, in the sally port, with the judge, his defense lawyer, and the prosecutor. Moreover, the judge livestreamed its exchange with Mr. Rogers into the courtroom so that members of the public could see it. Thus, all the components of his physical presence in court—physical appearance at the courthouse and face-to-face interaction with the judge and counsel in proceedings to which the public has access—were captured, albeit in deconstructed form.[9] Under the particular circumstances of this case and in the absence of any cited authority by Mr. Rogers to the contrary, we conclude that the physical presence requirement of Rule 43 was satisfied and that Mr. Rogers's waiver

---

[8] Mr. Rogers makes no argument about the need under Rule 43 to elicit the waiver after trial has commenced, although the government raised this timing issue in Superior Court. *See supra* note 2. The defense arguably abandoned any Rule 43 challenge on timing grounds in that forum when it objected only to Mr. Rogers's failure to be physically present in the courtroom and responded "nothing further" when the judge asked if there was "anything [] else you want to articulate to me as to why the hearing did not constitute him being physically present." In any event, in the absence of any timing argument in his brief to this court, we do not address it.

[9] Even if this exchange should have taken place after the jury was sworn—an argument Mr. Rogers has not made, *see supra* note 6—we are doubtful that the jury would have been present for Mr. Rogers's waiver. *Cf. Boyd v. United States*, 586 A.2d 670, 674-76 (D.C. 1991) (explaining that the elicitation of a defendant's waiver of their right to testify should be outside the presence of the jury).

of his right to be present at his trial was valid.[10]

Lastly, Mr. Rogers observes that, even if his waiver was valid, the court still had discretion to reject it, citing *Kimes*, 569 A.2d at 109 (holding that even if a defendant is deemed to have waived their right to presence under then Rule 43(b)(1)—now Rule 43(f)(1)(A)—because they voluntarily absented themselves from trial after it began, "there is still the question whether the trial court has abused its discretion in ordering a trial *in absentia*"). *Kimes* is a midtrial abscondence case where the defendant's waiver of their right to be present was inferred, *id.* at 110, and it is unclear if it has any application to a case where the defendant affirmatively waived his right to be present as Mr. Rogers did. Even if *Kimes* does apply, Mr. Rogers's reference to *Kimes* is unaccompanied by any argument explaining why the trial judge abused her discretion in his case under the factors identified in *Kimes*. *Id.* at 109-10 (listing factors such as "the likelihood that the trial could occur with the defendant present, the burden on the government, witnesses, and jurors if the trial were delayed, and the appellant's interest in being present at the trial proceedings that remained"). Although we could deem this abuse-

---

[10] Nonetheless, we acknowledge a lack of clarity about how Rule 43 should operate in circumstances such as those presented in Mr. Rogers's case—as opposed to a situation where a defendant has absconded, *see, e.g.*, *Crosby v. United States*, 506 U.S. 255, 256 (1993) (interpreting Fed. R. Crim. P. 43). Accordingly, we will refer this issue to the Rules Committee of the Superior Court.

of-discretion argument waived on that basis, we address and reject it, principally to underscore our appreciation for the judge's thoughtful and careful handling of a challenging situation. We have detailed the trial judge's efforts to communicate and elicit a valid waiver from Mr. Rogers above. The judge went to these lengths because she correctly recognized both that Mr. Rogers had a fundamental right to be present at his trial and that the status quo was untenable: Mr. Rogers, presumed innocent, had already been held in jail for fifteen months, which was far longer than the mandatory minimum sentence he would receive if convicted and was past the midpoint of the six- to twenty-four-month range under the sentencing guidelines; the use of even reasonable force made little sense simply to get him to court to waive his rights; and the government had a right to take its case to trial. Under all these circumstances, accepting Mr. Rogers's waiver was entirely reasonable and does not constitute an abuse of discretion.

### B.     Second Amendment

Citing *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), Mr. Rogers raises a Second Amendment challenge to his felon-in-possession of a firearm conviction under D.C. Code § 22-4503(a)(1). Because he did not raise this argument in the trial court, we review it only for plain error. *See Chew v. United States*, 314 A.3d 80, 83 n.1 (D.C. 2024) ("To succeed on plain error review, an appellant must

show that (1) there is error, (2) such error is 'plain,' meaning 'clear' or 'obvious,' [at] the time of appellate review; (3) the error affected appellant's 'substantial rights'; and (4) the error seriously affected 'the fairness, integrity or public reputation of [the] judicial proceedings.'"). Mr. Rogers's argument fails at the second step of the plain error inquiry.

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. In *Bruen*, the Supreme Court held "that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" unless the regulation at issue "is consistent with this Nation's historical tradition of firearm regulation." 597 U.S. at 17. Assuming Mr. Rogers is one of "the people" whose possession of a firearm is presumptively protected under the Second Amendment, we cannot say that the legislature's decision to bar his possession of a firearm because of his felony conviction is "plainly"—that is, "clearly" or "obviously," *Chew*, 314 A.3d at 83 n.1 —out of step with the historical tradition of firearm regulation. The Supreme Court and our court have yet to address this question and, to the extent the Supreme Court has expressed a view, it has at least suggested that such prohibitions are constitutional. *See United States v. Rahimi*, 602 U.S. 680, 699 (2024) (reiterating its statement in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that laws prohibiting "the possession of firearms by 'felons and the mentally ill' are

'presumptively lawful'"); *Bruen*, 597 U.S. at 81 (explaining that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons") (Kavanaugh, J., concurring) (citation modified); *but see Rahimi*, 602 U.S. at 701-02 (rejecting the government's argument that *Heller* and *Bruen* could be interpreted to limit Second Amendment rights to "responsible" citizens and observing that "[t]he question was simply not presented" in those cases).[11] We take no position on how this question should be resolved. Instead, we hold only that, given the lack of controlling precedent clearly answering it, Mr. Rogers cannot make the requisite plain-error showing for his unpreserved Second Amendment challenge to his felon-in-possession conviction.

*        *        *

For the foregoing reasons, we affirm the judgment of the Superior Court.

*So ordered.*

---

[11] Mr. Rogers's citation to one superseded federal appellate decision, *Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023), which the Supreme Court vacated in light of its decision in *Rahimi*, *Garland v. Range*, 144 S. Ct. 2706 (2024) (Mem.), does not change our analysis. Although Mr. Rogers still has some supporting authority in the Third Circuit's decision on remand, *Range v. Att'y Gen.*, 124 F.4th 218 (3d Cir. 2024) (holding the federal felon-in-possession law, 18 U.S.C. §922(g)(1), violated the Second Amendment as applied to Mr. Range), that decision—which prompted multiple concurrences and a dissent—is not binding precedent in the District of Columbia, and other federal appellate courts have rejected a Second Amendment challenge to the federal law. *See, e.g.*, *United States v. Jackson*, 110 F.4th 1120 (8th Cir. 2024).